Timothy RUPERT, Appellant

v.

## LIBERTY MUTUAL INSURANCE COMPANY

No. 00–3214.

United States Court of Appeals, Third Circuit.

Argued on Oct. 24, 2000.

Opinion Filed: May 16, 2002.

See also 781 A.2d 132.

James D. Belliveau (Argued), Edgar Snyder & Associates, LLC, Pittsburgh, PA, Counsel for Appellant.

Stanley A. Winikoff (Argued), Jones, Gregg, Creehan & Gerace, LLP, Pittsburgh, PA, Counsel for Appellee.

Before: BECKER, Chief Judge,
SCIRICA and FUENTES, Circuit Judges.

OPINION OF THE COURT

FUENTES, Circuit J.

This case raises the issue whether the plaintiff, insured under an automobile insurance policy issued by the defendant, is bound by a stacking waiver signed by his deceased wife, who was formerly the first named insured on the policy.[1] This issue returns to us from the Pennsylvania Supreme Court, notwithstanding that it granted our certification of a question of law.[2] We framed the issue on certification as follows:

> Does the requirement in 75 Pa.C.S. § 1738(e) that a valid stacking waiver "must be signed by the first named insured" mean that a valid waiver must be signed by the current first named insured on a policy, thus imposing a continuing obligation on insurers to acquire a new stacking waiver if the first named insured on a policy changes, or does § 1738(e) merely require that a valid waiver only must be signed by the first named insured at the time the waiver is signed?

Unfortunately, the Court was unable to answer the certified question, because, with one justice recused, the Court divided

1. In this case, "stacking" refers to the practice of allowing an insured to aggregate or "stack" the coverage limits of each vehicle covered under an insurance policy to pay for damages sustained in an accident.

2. The Pennsylvania Supreme Court accepts questions of law upon certification from a United States Court of Appeals or the United States Supreme Court pursuant to its Internal Operating Procedures. *See, e.g., Coady v. Vaughn*, 564 Pa. 604, 770 A.2d 287, 288

3–3. *Rupert v. Liberty Mut. Ins. Co.*, 566 Pa. 387, 781 A.2d 132 (2001). Opinions were filed by Justices Zappala and Cappy. Justice Zappala, joined by Chief Justice Flaherty and Justice Castille, opined that the validity of a waiver of stacking uninsured motorists coverage is determined at the inception of the policy. In contrast, Justice Cappy, joined by Justices Newman and Saylor, would hold that 75 Pa.C.S. § 1738(e) requires that a valid stacking rejection form must be signed by the current first named insured.

The uncertainty over the state of Pennsylvania law on this issue that prompted us to certify this question in the first place is compounded by this result. We are therefore left with no choice but to predict what the Pennsylvania Supreme Court will ultimately decide by analyzing Pennsylvania law ourselves.[3] We find that Justice Zappala's view best reflects Pennsylvania law and will render judgment accordingly, affirming the judgment of the District Court. We will state our rationale succinctly. After all, we write on quicksand; once the Pennsylvania Supreme Court faces this question in another case—we hope soon—it will presumably resolve it once and for all, and anything we write will disappear.

I.

In 1984, Cynthia Winters purchased an automobile insurance policy from defendant, Liberty Mutual Insurance Company

(2001); *Fiore v. White*, 562 Pa. 634, 757 A.2d 842, 843 (2000).

3. There would be *no point* to our re-submitting the question, for it is possible that Justice Eakin, a newly elected justice, would vote in the same manner as Chief Justice Flaherty, whom he replaced, leaving the matter at 3–3. Resubmitting the question, therefore, would likely result in only further—and needless—delay of this already protracted litigation.

("Liberty Mutual"). Ms. Winters included her then-boyfriend Timothy Rupert, the plaintiff, on her policy as a "driver," while Cynthia herself was the sole "named insured." As required by Pennsylvania law, the policy included coverage for being struck by an uninsured motorist. In 1988, Cynthia and Timothy married. In 1991, the now Cynthia Rupert, still the only named insured on the insurance policy that covered herself and Timothy, executed a "Rejection of Stacked Uninsured Coverage Limits" form for her Liberty Mutual auto insurance policy. Thus, in 1991 Cynthia waived the right to stack uninsured motorist coverage on her policy, under which Timothy was also insured. In rejecting stacked coverage, Cynthia acknowledged that the limits of coverage she was purchasing would be reduced and that her insurance premiums would be reduced as well.

In 1993, Timothy was added as a named insured under the policy, while Cynthia remained as the first named insured. Timothy testified in his deposition that Cynthia handled all of their insurance matters until July 1996, when she underwent heart bypass surgery. After that, Timothy took over paying the bills. On January 20, 1997, Cynthia died. Two days later, Timothy changed the policy to remove Cynthia's name so that he was now the sole named insured on the policy. Over the next few months, Timothy made several changes to the policy, such as adding certain cars to the coverage and removing others. Timothy also renewed the insurance policy on May 22, 1997.

On July 26, 1997, Timothy was seriously injured when he was struck by a car while standing next to his own vehicle. The car that hit him was operated by an uninsured motorist. Timothy's insurance policy included $300,000 in uninsured motorist coverage per accident. Because the policy covered two vehicles at the time of the accident, Timothy could collect up to $600,000 on his accident if stacking were allowed under the policy. Liberty Mutual contends that, since Cynthia Rupert had waived stacked coverage, it limited its payment on Timothy's claim to $300,000. Timothy submits that he was entitled to receive up to $600,000 because, at the time of the accident, the waiver of stacking was not valid as applied to him.

## II.

Timothy claims that, because Cynthia died in January 1997 and thus was not the "first named insured" on the policy at the time of the accident, the waiver that she executed in 1991 was no longer valid as of July 1997. He interprets the Pennsylvania statute that applies to waivers of stacking, 75 Pa.C.S. § 1738, to require that the waiver be signed by the *current* first named insured on a policy in order to be valid. Under this view, if the first named insured changes, a waiver signed by the former first named insured is no longer valid. According to Liberty Mutual's reading of the statute, a policy's waiver continues to be valid even after the policy's first named insured changes, so long as whoever executed the waiver was the first named insured at that time. Because there was no dispute between the parties as to the facts, the Magistrate Judge asked both sides to submit summary judgment motions.[4] The District Court granted Lib-

---

4. An inchoate factual dispute has emerged on appeal insofar as Liberty Mutual now intimates that when renewing the policy Timothy in fact *knew* that stacking had been waived. The record, however, provides no support for this assertion. *See* Dep. of T. Rupert at 43, 76 (testifying that although the waiver of stacking was clearly visible on the policy, he never understood what the term meant).

erty Mutual's motion for summary judgment, and Timothy Rupert appealed.

The District Court had diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a). We exercise jurisdiction under 28 U.S.C. § 1291. Our review of a district court's grant of summary judgment is plenary. *See TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 199 (3d Cir.2001).

## III.

The Pennsylvania General Assembly enacted the Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S. §§ 1701–99, "in large part" to check the rapidly rising cost of automobile insurance. *Huber v. Erie Ins. Exchange*, 402 Pa.Super. 443, 587 A.2d 333, 334 (1991). The underlying aim of the MVFRL is "to provide broad coverage to assure the financial integrity of the policyholder." *Danko v. Erie Ins. Exch.*, 428 Pa.Super. 223, 630 A.2d 1219, 1222 (1993), *aff'd*, 538 Pa. 572, 649 A.2d 935 (1994). Accordingly, Pennsylvania courts have held that "the MVFRL is to be construed liberally to afford the greatest possible coverage to injured claimants." *Sturkie v. Erie Ins. Group*, 407 Pa.Super. 117, 595 A.2d 152, 157–58 (1991). Courts should refrain, however, from rewriting the MVFRL " 'under the pretext of pursuing its spirit.' " *Wolgemuth v. Harleysville Mut. Ins. Co.*, 370 Pa.Super. 51, 535 A.2d 1145, 1151 (1987) (quoting 1 Pa.C.S. § 1921(b)).

With that framework in mind, we consider the respective opinions of Justices Cappy and Zappala. They could not agree upon whether the plain language of § 1738 requires that a stacking waiver be signed by the *current* first named insured for it to be valid. The statute, as it pertains to uninsured motorist coverage, reads as follows:

**(a) Limit for each vehicle.**—When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

**(b) Waiver.**—Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

**(c) More than one vehicle.**—Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

**(d) Forms.**—

(1) The named insured shall be informed that he may exercise the waiver of the stacked limits of uninsured motorist coverage by signing the following written rejection form:

UNINSURED COVERAGE LIMITS

By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the

limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily

reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙
## Signature of First Named Insured
∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙
## Date

**(e) Signature and date.**—The forms described in subsection (d) must be signed by the first named insured and dated to be valid. Any rejection form that .does not comply with this section is void.

75 Pa.C.S. § 1738.

Justice Cappy, who would hold that a valid stacking waiver does in fact require the signature of the current first named insured, expressed concern that a contrary holding would run counter to the General Assembly's intention "to ensure that policyholders would be given full information regarding availability of stacked coverage before deciding whether or not to reject it." *Rupert*, 781 A.2d at 135. He reasoned that, if the validity of a waiver of uninsured motorist coverage is determined at the inception of the policy, then future insureds would "not even minimally [be] afforded constructive knowledge of the option to reject stacked coverage." *Id.* at 136. Further, Justice Cappy rejected Justice Zappala's view that waiver validity is determined "at the inception of the policy" on the ground that such language appears nowhere in § 1738. *Id.*

While it is true that the statute does not directly state that validity is determined "at the inception of the policy," it is also apparent that § 1738 does not explicitly require that a valid waiver form be signed by the *current* first named insured. If the language of the statute did either of these things, then there would be no issue before us now.

In the view of Justice Zappala, we can infer that § 1738 does not require the

signature of the current first named insured based upon the language used in subsections (d) and (e) of the statute. He explained:

> Pursuant to Section 1738(d), each named insured must be informed of the option to waive stacked coverage. The statute mandates the notification be presented in the specific manner of the prescribed form described in Section 1738(d)(1). That form calls only for the signature of the first named insured. Likewise, Section 1738(e) also mandates the signature of the first named insured. My reading of the plain meaning of Section 1738(d) and (e) is that the signature of the first named insured evidences the insurer's fulfillment of its obligation of offering and informing the named insured of his or her right to waiver. Given this plain meaning of the statute, *I find that, for purposes of Section 1738, the signature of the first named insured on a valid waiver at the inception of the policy is evidence that each named insured under the policy was fully aware of the options regarding stacked policy limits.*

*Rupert*, 781 A.2d at 135 (emphasis added). We agree with Justice Zappala's interpretation of the statute. Under his view, the first named insured's signature on a valid waiver form "at the inception of the policy" is sufficient to show that each named insured under the policy received notice of the policy's stacking options. Further, Justice Zappala is clearly satisfied that individuals added to a policy as named insureds subsequent to the execution of a stacking waiver, such as Timothy Rupert

in this case, will receive adequate notice of the stacking waiver through the first named insured.

We find support for Justice Zappala's conclusion in subsection (c) of the statute, which provides that "[e]ach named insured *purchasing* ... coverage ... shall be provided the opportunity to waive the stacked limits of coverage ...." 75 Pa.C.S. § 1738(c) (emphasis added). This language further suggests that insurers' obligation to inform named insureds of their right to waiver exists only at the time that coverage is initially purchased.

Moreover, we do not share Justice Cappy's view that failing to require the signature of the current first named insured on a valid waiver form would violate the legislative goal of ensuring knowledgeable rejection of coverage. As Justice Cappy acknowledged, the legislature adopted the fiction of "constructive knowledge" in drafting § 1738(d). In relevant part, the waiver form described in § 1738(d) reads, "By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself *and members of my household* ...." 75 Pa.C.S. § 1738(d) (emphasis added). In other words, as Justice Cappy explained, the signature of the first named insured on a proper waiver form is sufficient to show that all other insureds had knowledge of the stacked coverage option, and acquiesced in rejecting it.

Justice Cappy raises the concern that, if "a rejection form signed 'at the inception of the policy' indefinitely binds all future insureds, including those added long after the original first named insured

is removed from the policy[,]" then "subsequent insureds are not even minimally afforded constructive knowledge of the option to reject stacked coverage." *Rupert*, 781 A.2d at 136. We question, however, whether this would leave subsequent insureds with any less knowledge of the waiver option than if the original first named insured *had remained* on the policy as the first named insured at the time subsequent insureds were added to the policy.

In both situations, a decision on whether to reject stacked coverage is made prior to the addition of subsequent insureds. In both situations, the first named insured has knowledge of the option to reject stacked coverage.[5] The only difference is that, in the scenario that Justice Cappy finds troubling, the current first named insured is not the one who actually signed the rejection form. We do not see, however, why subsequent insureds would not receive at least constructive knowledge from a first named insured who has knowledge of the decision to reject stacked coverage, but who was not the one actually to sign the rejection form.

Justice Cappy does not suggest that first named insureds should be required to sign a new waiver form every time a new insured is added to the policy. As long as a stacking rejection form was signed by the current first named insured, he appears satisfied that the fiction of constructive knowledge is sufficient to meet the legislative goal of ensuring knowledgeable rejection of coverage. We see no reason, however, why subsequent insureds should not be deemed to have received the same constructive knowledge from a first named

---

5. Even if the current first named insured was not the one who signed the rejection form at the inception of the policy, he would have had at least constructive knowledge of the waiver option either through the original first named insured or through a subsequent first named insured who, herself, had at least constructive knowledge of the option. In other words, subsequent first named insureds would always receive at least constructive knowledge of the waiver option via a chain of first named insureds linking back to the original.

insured who has knowledge of the waiver option but who was not the one to have actually signed the rejection form.

In this case, Timothy Rupert became a named insured under the policy with Liberty Mutual in 1993, when Cynthia Rupert was listed as the first named insured. By this time, Cynthia had already signed a valid rejection form waiving stacked coverage. Through her, Timothy gained either actual knowledge of the waiver option or at least constructive knowledge when he was added to the policy. Thus, when Timothy became the first named insured under the policy in 1997, we can presume that he knowingly rejected stacked coverage despite the fact that he never signed a rejection form. At the very least, he had received constructive knowledge of the waiver option through Cynthia, the original first named insured.

Based upon our interpretation of the language of § 1738, which we find to be consistent with the legislative goal of ensuring knowledgeable rejection of coverage, we conclude that the MVFRL does not impose a continuing obligation on insurers to acquire a new stacking waiver whenever the first named insured on a policy changes. A valid stacking waiver will remain valid as long as it was signed by the person who was designated as the first named insured at the time the waiver was signed. Thus, we hold that Timothy Rupert is not entitled to derive the benefits of stacked coverage because the waiver form executed by Cynthia Rupert remained valid even after Timothy became the first named insured under the policy. Further, after Cynthia signed the waiver, the insurance premiums paid by her and Timothy were reduced to reflect the absence of stacked coverage. Allowing Timothy Rupert to reap the benefits of stacked coverage without having paid for stacked coverage not only seems unfair, but could compromise the legislative goal of reducing the cost of insurance.

### IV.

For the foregoing reasons, we will affirm the judgment of the District Court.

BECKER, Chief Judge, dissenting.

I share Judge Fuentes' frustration that we must revisit this case and his hope that the Pennsylvania Supreme Court will soon resolve the issue. Since we "write on quicksand," Maj. op. at 244, I will write succinctly. In my view, Justice Cappy's views best reflect Pennsylvania law. The critical part of his rationale is as follows:

> The legislature placed the burden of obtaining a valid rejection of stacked coverage on the insurance company: The rejection forms in § 1738(d) must be signed and dated by the first named insured, or else the rejection of stacked coverage is void. 75 Pa.C.S. § 1738(e). It is evident that the General Assembly sought to ensure that policyholders would be given full information regarding availability of stacked coverage before deciding whether or not to reject it. Cf. Salazar v. Allstate Insurance Co., 549 Pa. 658, 702 A.2d 1038, 1044 (1997) (sections 1731, 1791 and 1791.1 describe information that insurer must provide "in order that the insured may make a knowing and intelligent decision on whether to waive [uninsured motorists] benefits coverage").
>
> . . . .
>
> The question with which we are presented in this matter involves the effect of a valid waiver by the first named insured. The Opinion of Mr. Justice Zappala finds that the validity of a waiver of uninsured motorists coverage is determined "at the inception of the policy." Yet this language appears nowhere in section 1738. Moreover, under this

expansive view, a rejection form signed "at the inception of the policy" indefinitely binds all future insureds, including those added long after the original first named insured is removed from the policy; these subsequent insureds are not even minimally afforded constructive knowledge of the option to reject stacked coverage. This troubling result does not follow if the insurer has obtained a rejection form from the current first named insured, whose signature would reject coverage for all those insureds currently on the policy. In light of the legislative goal of ensuring knowledgeable rejection of coverage, and the conclusive effect of the first named insured's signature upon other insureds, it is of paramount importance that any *new* first named insureds receive the notice prescribed by § 1738.

*Rupert*, 781 A.2d at 135–36.

I find this reasoning persuasive. In my view, by rendering the notion of constructive knowledge almost infinitely elastic, Judge Fuentes has placed more weight on it than it can bear, especially in the context of the particular legislative provision at issue, which is part of a statutory scheme (Pennsylvania's Motor Vehicle Financial Responsibility Law ("the MVFRL"), 75 Pa. C.S. §§ 1701–99) whose "underlying objective" is "to provide broad coverage to assure the financial integrity of the policyholder." *Danko v. Erie Ins. Exch.*, 428 Pa.Super. 223, 229, 630 A.2d 1219 (1993), *aff'd*, 538 Pa. 572, 649 A.2d 935 (1994).

Consistent with this objective, the Pennsylvania courts, pursuant to their statutory obligations to construe statutes to effectuate the intent of the legislature, *see* 1 Pa.C.S. § 1921(a), and to construe statutes liberally in order to promote justice, *see* 1 Pa.C.S. § 1928(c), have concluded that the MVFRL ought to be interpreted so as to "afford[ ] the injured claimant the greatest possible coverage." *Motorists Ins. Cos. v. Emig*, 444 Pa.Super. 524, 538, 664 A.2d 559 (1995). Accordingly, "[i]n close or doubtful cases," the MVFRL and insurance policies issued in compliance with it should be construed "to favor coverage for the insured." *Id.*

As evidenced by the Pennsylvania Supreme Court's 3–3 split, this case is clearly "close" and "doubtful." Justice Cappy's interpretation of § 1738 as requiring that a valid waiver of stacking be executed by the current first named insured is the construction that would afford Timothy, the injured claimant here, "the greatest possible coverage." As Justice Cappy explained, the very detailed requirements of § 1738 are designed to "ensur[e] *knowledgeable* rejection of coverage." *Rupert*, 781 A.2d at 135 (emphasis added). Consequently, even if ruling for Timothy rewards him for being ignorant as to the terms of the policy, such a result appears to be consistent with § 1738's purpose of protecting insureds from unintentionally waiving stacked coverage.

Additionally, comparing what the legislature did not state in § 1738 with what it did state in other provisions of the MVFRL informs our resolution of this issue. Section 1791, for instance, which prescribes the notice requirements for insurance policies, explicitly provides that an insured is presumed to have knowledge of the policy's benefits and limits so long as notice was provided to him "at the time of application for original coverage." Section 1738, on the other hand, does not contain any similar express presumption that a waiver signed by the first named insured at the inception of coverage is to remain valid throughout the policy's lifetime.[1]

---

**1.** It is instructive to contrast this case with our decision in *Nationwide Mutual Insurance*

Finally, I am not convinced that allowing Timothy to reap the benefits of stacked coverage would compromise the legislative goal of reducing insurance costs, as Judge Fuentes intimates. Rather, whatever increased costs that might result from a holding in favor of Timothy would be negligible, for were we to rule in Timothy's favor, Pennsylvania insurers, as rational profit-maximizing firms, would henceforth always seek the consent of the *current* first named insured in policies that have waived UM stacking coverage. The unique problem presented by this case, therefore, would not arise again.

For these reasons, I respectfully dissent.

Co. v. Buffetta, 230 F.3d 634 (3d Cir.2000). Like the case at bar, *Buffetta* involved a married couple that was once insured on the same automobile policy. Mr. Buffetta was originally the sole "named insured" while his wife was on the policy as a "driver." As the sole named insured, Mr. Buffetta chose to increase the policy's bodily injury liability limits, but declined to increase the policy's uninsured motorist ("UM") coverage. Under the MVFRL, an insurance company must provide UM coverage at a level equal to the policy's bodily injury coverage unless the insured requests a reduction by executing an Uninsured Motorist Coverage Authorization Form (a "waive down"). *See* 75 Pa.C.S. §§ 1731, 1734. Consequently, in order to avoid the increase in UM coverage concomitant to the increase in his bodily injury liability limit, Mr. Buffetta executed the required waive down.

A year later, the Buffettas divorced, and Mrs. Buffetta took title to the car. She then changed the insurance policy to be in her name alone. Soon thereafter, Mrs. Buffetta's father, who lived in her house and was covered by the policy, was killed in an automobile accident with an uninsured driver. Mrs. Buffetta made a claim on the policy, contending that the limits of the UM coverage should not be the lower amount approved by her husband, but rather the full liability limit of the policy because she had not personally executed the waive down.

The court held that Mrs. Buffetta was bound by her ex-husband's waive down, its opinion focusing on the "permissive terms" of § 1734's waive down provision as it relates to the insurer's responsibilities. *Id.* at 641. The panel noted that § 1734, "by its terms, does not *require* anything to be done by an insurer to permit the *reduction* in the amount of UIM coverage under a policy," *id.* at 639, but rather that it "provides that 'a named insured *may* request in writing the issuance of coverages ... in amounts equal to or less than the limits of the liability for bodily injury.' " *Id.* (quoting § 1734) (alteration in original).

The statute at issue in this case, in contrast, is not written in "permissive terms." Instead, § 1738 imposes various requirements on the insurer for a valid waiver of stacking. For instance, unlike § 1734, § 1738 *requires* that an opportunity for waiver of stacking be provided to the insured. In short, *Buffetta* does not control the outcome of this case because its holding was in large part based on the fact that § 1734 never required the insurer to take any affirmative steps to provide the insured with the opportunity to reduce UM coverage, whereas § 1738, the relevant statutory provision in the case at bar, clearly imposes affirmative obligations on the insurer.