Victor M. SACKETT and Diana
L. Sackett, Appellants

v.

NATIONWIDE MUTUAL INSURANCE
COMPANY, Appellee.

Superior Court of Pennsylvania.

Argued June 8, 2004.

Filed July 14, 2005.

Ronald J. Bergman, Greensburg, for appellants.

Peter B. Skeel, Pittsburgh, for appellee.

Before: FORD ELLIOTT, TODD, and PANELLA, JJ.

OPINION BY TODD, J.:

¶ 1 In this declaratory judgment action, Victor M. Sackett and Diana L. Sackett appeal the order granting the summary judgment motion of Nationwide Mutual Insurance Company ("Nationwide"). We affirm.

¶ 2 This action stems from a car accident on August 5, 2000 in which Victor Sackett was severely injured as a passenger in a car owned and driven by Robert Bulger when another vehicle, driven by Charlynne Dicks, collided with them. Sackett settled his claim with Dicks for $15,000, and with Bulger for $100,000, and then sought underinsured motorist ("UIM") benefits under his automobile policy with Nationwide.

¶ 3 The Sacketts purchased this policy with Nationwide in August 1998, insuring two vehicles—a 1992 Chevrolet Lumina and a 1998 Chevrolet Malibu—with UIM limits of $100,000 per person. At that time, Victor Sackett was provided with a

waiver form pursuant to Section 1738 of the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. §§ 1701–1799.7 (the "MVFRL"), and he rejected stacked limits of UIM and uninsured motorist ("UM") coverage with respect to those two vehicles. In July 2000, the Sacketts added a third vehicle, a 2000 Ford Windstar, to the same policy. No new stacking waiver was provided or executed at this time, and Nationwide issued unstacked UIM coverage to this vehicle as well.

¶ 4 Following his injury and UIM claim, Nationwide disputed the amount of UIM coverage available, asserting that the coverage was unstacked with respect to all the vehicles. Thereafter, on August 4, 2002, the Sacketts filed this declaratory judgment action, averring that Nationwide had a duty to offer a Section 1738 waiver of stacking form each time a vehicle was added to a policy, and since none was provided with respect to the Ford Windstar, that stacked coverage should apply. Accordingly, they asserted that pursuant to Section 1738(a), the UIM coverage for the Ford Windstar should be stacked with the other two vehicles, raising the UIM coverage to $300,000 (3 × $100,000), or in the alternative, $200,000 (apparently the Ford Windstar coverage stacked with *one* other vehicle). Nationwide contended, on the other hand, that it had no duty to offer additional waivers when new vehicles were added, and that the waiver executed at the inception of the policy applied to all the vehicles, thus yielding unstacked UIM coverage of $100,000 in total.

¶ 5 The parties filed cross motions for summary judgment. The trial court, by the distinguished president judge Daniel J. Ackerman, ruled in favor of Nationwide, finding, in the absence of a Pennsylvania appellate decision on point, sufficiently analogous the decision of the Court of Appeals for the Third Circuit in *Rupert v.*

*Liberty Mut. Ins. Co.*, 291 F.3d 243 (3d Cir.2002). Therein, the court construed the divided decision of the Pennsylvania Supreme Court in *Rupert v. Liberty Mut. Ins. Co.*, 566 Pa. 387, 781 A.2d 132 (2001), wherein the Court failed to decide, in a 3–3 decision, the question certified to it by the Third Circuit. The Third Circuit predicted that our Supreme Court would rule that the signature of the "first named insured" waiving stacked UM coverage at the inception of a policy evidences the insurer's fulfillment of its obligation to offer and inform the named insured of the right to waive, and that such waiver applies even when the first named insured on the policy later changes. Herein, the trial court found that the same logic applied to newly-added vehicles, and concluded that the Sacketts' initial waiver of stacked coverage continued to apply, and so granted Nationwide's summary judgment motion.

¶ 6 The Sacketts appealed, and now present the following questions for our review:

1. Whether the trial court erred when it failed to interpret Section 1738 of the MVFRL to require the insurer to obtain a rejection of stacked UIM coverage for a new vehicle added to the insured's policy at the time such coverage was purchased?

2. Whether the trial court erred when it failed to determine that the addition of a new vehicle to an auto policy constitutes a material change so as to amount to a new issuance of the policy, thus requiring rejection of stacked coverage at that time?

3. Whether the trial court erred when it further determined that the MVFRL provides no remedy for an insured as a result of the failure of an insurer to obtain a valid rejection of stacked UIM

coverage as required by Section 1738 of the MVFRL?

(Appellants' Brief at 4.)

¶ 7 Our standard of review of an order granting or denying a motion for summary judgment is well established:

We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Pappas v. Asbel,* 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001) (citations omitted).

■ ¶ 8 The first two issues raised by the Sacketts concern the trial court's determination that Nationwide was not obliged to obtain a new rejection of stacked UIM coverage when the Sacketts added the 2000 Ford Windstar to their policy, thus we address them together. We find the issue of whether the addition of a vehicle to an automobile insurance policy requires new stacking waivers to be a question of first impression. For the following reasons, we agree with the trial court that Nationwide was not required to obtain a new rejection of stacked UIM coverage when the vehicle was added to the Sacketts' policy.

¶ 9 At the heart of this dispute is Section 1738 of the MVFRL, which provides:

**§ 1738. Stacking of uninsured and underinsured benefits and option to waive**

(a) **Limit for each vehicle.**—When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

(b) **Waiver.**—Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

(c) **More than one vehicle.**—Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

(d) **Forms.**—

(1) The named insured shall be informed that he may exercise the waiver of the stacked limits of uninsured motorist coverage by signing the following written rejection form:

UNINSURED COVERAGE LIMITS

By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be

the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

. . . .

Signature of First Named Insured

. . . .

Date

(2) The named insured shall be informed that he may exercise the waiver of the stacked limits of underinsured motorist coverage by signing the following written rejection form:

### UNDERINSURED COVERAGE LIMITS

By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

. . . .

Signature of First Named Insured

. . . .

Date

(e) Signature and date.—The forms described in subsection (d) must be signed by the first named insured and dated to be valid. Any rejection form that does not comply with this section is void.

75 Pa.C.S.A. § 1738. It is undisputed that at the inception of the Nationwide policy, the Sacketts executed waivers of stacked UM and UIM coverage pursuant to Section 1738. The question before us is whether these waivers continued in force with the addition of the Ford Windstar to the policy, or whether Nationwide was obliged to offer and obtain new stacking waivers at that time.

¶ 10 As we noted, the trial court based its decision on the Third Circuit's decision in *Rupert v. Liberty Mut. Ins. Co.*, 291 F.3d 243 (3d Cir.2002), which itself construed our Supreme Court's divided decision in *Rupert v. Liberty Mut. Ins. Co.*, 566 Pa. 387, 781 A.2d 132 (Pa.2001). At issue in those cases was whether the waiver of the "first named insured" of stacked UM coverage at the inception of a policy continued to apply even when the first named insured on the policy later changed.[1] The Third Circuit certified this question to our Supreme Court which, unfortunately, split 3–3 on the issue. In an opinion authored by then Chief Justice Stephen A. Zappala, three of the justices took the view that the MVFRL, based on a plain reading of Section 1738, required only the signature of the first named insured on the policy to be effective, that "the signature of the first named insured evidences the insurer's fulfillment of its obligation of offering and informing the named insured of his or her right to waiver," *Rupert*, 566 Pa. at 392, 781 A.2d at

---

**1.** In these cases, the wife, as the first named insured on the policy, executed a waiver of UM stacking. The husband, who had been listed only as a driver on the policy at the time, was added as a named insured when the parties were married. Later, the wife died and the husband was substituted as the first named insured on the policy. No new stacking waiver was executed at that time. After he was injured by another vehicle, the husband sought stacked UM benefits, which the insurer refused.

135, and thus that the validity of the stacking waiver is determined at the inception of the policy.

¶ 11 In an opinion by Chief Justice Ralph J. Cappy, three of the justices expressed the view that the General Assembly, through Section 1738, "sought to ensure that policyholders would be given full information regarding availability of stacked coverage before deciding whether or not to reject it," *Rupert,* 566 Pa. at 393, 781 A.2d at 135, and that allowing a rejection form signed at the inception of a policy to "indefinitely bind[ ]" all future insureds, including those added after the original first named insured is removed from the policy, fails to "even minimally afford[ ] constructive knowledge of the option to reject stacked coverage" to subsequent insureds, *id.* at 394, 781 A.2d at 136. This problem is avoided, Chief Justice Cappy concluded, by requiring the insurer to obtain new rejections from the *current* first named insured: "In light of the legislative goal of ensuring knowledgeable rejection of coverage, and the conclusive effect of the first named insured's signature upon other insureds, it is of paramount importance that any *new* first named insureds receive the notice prescribed by § 1738." *Id.* (emphasis original).

¶ 12 The Third Circuit, forced to resolve the split, was persuaded by the opinion of then Chief Justice Zappala, and predicted that our Supreme Court would ultimately resolve the issue along the lines proffered in that opinion. Thus, the court held:

> [T]he MVFRL does not impose a continuing obligation on insurers to acquire a new stacking waiver whenever the first named insured on a policy changes. A valid stacking waiver will remain valid

as long as it was signed by the person who was designated as the first named insured at the time the waiver was signed.

*Rupert,* 291 F.3d at 249.

¶ 13 We are not bound by the determination of the Third Circuit in *Rupert,* although it has persuasive authority. *See Cummins v. Atlas R.R. Const. Co.,* 814 A.2d 742, 747 n. 5 (Pa.Super.2002). Further, as our Supreme Court's decision in *Rupert* is a split decision, it also is not binding. Nevertheless, we find little in these opinions that supports the Sacketts' position herein. The Third Circuit's decision, and the opinion of then Chief Justice Zappala in *Rupert,* both support a conclusion that a waiver of stacking at the inception of a policy is continually binding. Furthermore, the opinion of Chief Justice Cappy in *Rupert* focused on the issue of constructive notice and knowledge of the insureds, a concern not present in the instant case as none of the insureds under the Nationwide policy, including the first named insured, changed.

¶ 14 Since the *Rupert* decisions were issued, however, this Court has decided *Smith v. The Hartford Ins. Co.,* 849 A.2d 277 (Pa.Super.2004), *appeal denied,* 867 A.2d 524 (Pa.2005), which, we find, aids our resolution herein. In that case, Smith purchased automobile insurance and, a few months later, executed a waiver of UIM coverage pursuant to Section 1731 of the MVFRL.[2] Some time later, Smith increased the liability coverage on the policy to $500,000. The policy remained in effect over the succeeding years when Smith's wife was injured in a car accident involving an alleged underinsured motorist. The

---

**2.** Section 1731(b) provides that that the "named insured shall be informed that he may reject uninsured motorist coverage by signing" the written rejection form specified in the statute. 75 Pa.C.S.A. § 1731(b). Section 1731(c) provides the identical option with respect to UIM coverage.

Smiths asserted a right to UIM coverage despite the prior rejection of UIM coverage.

¶ 15 On appeal, we addressed the trial court's conclusion that, as the increase in liability coverage was more than a "cosmetic change", it constituted a new policy for which a new UIM waiver was required to be effective. *Smith*, 849 A.2d at 280. In rejecting this contention, we first noted that "[t]here is no statutory authority for such a rule, nor can such a rule be discerned in any prior case law." [3] *Id.* Moreover, we noted that the MVFRL indicates just the opposite and quoted Section 1791, which, in specifying the notification requirements to insureds, states:

> It shall be presumed that the insured has been advised of the benefits and limits available under this chapter provided the following notice in bold print of at least ten-point type is given to the applicant at the time of application for original coverage, *and no other notice or rejection shall be required.*

75 Pa.C.S.A. § 1791 (emphasis added). Accordingly, this Court rejected the contention that a new rejection was required:

> The General Assembly in writing this certainly knew that the purchase of an insurance policy was not a lifetime contract. Policies are renewed, vehicles are bought and sold, amounts of coverage change. Yet, in spite of this knowledge, the General Assembly has specifically stated that once the applicant has purchased the policy and been informed of the choices available, no other notice or rejection shall be required.

*Smith*, 849 A.2d at 280. We concluded that the decision of the trial court ignored "the language of section 1791 that clearly states once notice of available coverages and the possibility of rejection of those

coverages has been given, no further rejection notice or form is required." *Id.* at 281.

¶ 16 This Court distinguished "sign-down" cases, where an insured does not waive UM/UIM coverage, but explicitly chooses, as provided in the MVFRL, to purchase such coverage at an amount lower than the liability limits. While noting that "[c]ase law indicates that when the liability limits change[,] a new request for lower limits must also be submitted or the statutorily mandated equal limits will apply," *id.*, we concluded that:

> Requiring a new request for lower limits does not equate to the creation of a new policy and subsequent requirement to provide new rejection forms.... The requirement for a new request for lower limits is not based on the premise that a new policy has been issued, but is based upon the statutory presumption that UM/UIM coverage, when purchased, will be equal to the bodily injury limits. Thus, the change in bodily injury coverage amount is directly tied to the amount of optional UM/UIM coverage that has been elected.

*Id.*

¶ 17 In sum, we find that *Smith* stands for the proposition that a rejection of UM/UIM coverage carries forward for the lifetime of the policy unless affirmatively changed, and is not altered by a change in liability limits. In the instant case, we are concerned with a waiver of UM/UIM stacking, not a waiver of UM/UIM coverage. Furthermore, the policy change at issue was not a change to the policy limits, but the addition of a new vehicle to the policy. We conclude nonetheless that *Smith, supra,* constrains our determina-

---

**3.** Neither of the *Rupert* decisions was discussed in *Smith, supra.*

tion herein.[4]

¶ 18 Stacking affects the amount of UM/UIM coverage (whether the UM/UIM limits are to be multiplied by the number of vehicles insured under a policy), not whether there is UM/UIM coverage. Thus, when a vehicle is added to a policy, the limits of UM/UIM coverage are potentially affected, depending on whether stacking has been waived. In *Smith*, however, we held that even when the limits of liability coverage are *explicitly* changed, no new UM/UIM rejections are required.

█ ¶ 19 Moreover, our decision in *Smith* was based in large part on the declaration in Section 1791 that "[i]t shall be presumed that the insured has been advised of the benefits and limits available under [the MVFRL]" where the statutory notice is given and "no other notice or rejection shall be required." 75 Pa.C.S.A. § 1791.[5] Thus, Section 1791, as in *Smith*, eliminates the need for additional stacking waivers following the inception of the policy.[6] In short, we hold that a waiver of stacked UM or UIM coverage, once properly executed, continues to bind the insureds even after the addition of new vehicles to the policy, and that a new waiver need not be obtained by the insurer at the time the new vehicle is added.

¶ 20 Finally, we reject the Sacketts' argument that the addition of a vehicle to the policy is such a material change that a new policy is created necessitating new waivers. The decision in *Smith, supra,* is, in part, a rejection of such a claim. *See Smith,* 849 A.2d at 280 (even though "[p]olicies are renewed, *vehicles are bought and sold,* amounts of coverage change," the legislature specifically stated "that once the applicant has purchased the policy and been informed of the choices available, no other notice or rejection shall be required" (emphasis added)). Moreover, we note that a majority of jurisdictions that have directly addressed this issue, albeit with varying statutory language in question, have explicitly or implicitly rejected the notion that the addition of a vehicle to a policy is a new policy requiring new waivers. *See Colonia Underwriters Ins. Co. v. Richardson,* 325 Ark. 300, 924 S.W.2d 808 (1996) (after insured rejected UIM coverage at time he applied for auto insurance, UIM carrier was not required to notify insured of availability of UIM coverage when he amended policy to add vehicles); *Allstate Ins. Co. v. Parfrey,* 830 P.2d 905 (Colo.1992) (rejecting lower court's conclusion that material changes like increase in liability coverage or additional of new vehicle warrant new offer of UM/UIM coverage); *Government Employees Ins. Co. v. Stafstrom,* 668 So.2d 631, 632 n. 1 (Fl.App.1996) (based on statutory language that higher limits of coverage need not be provided to policies which "renew[ ], extend[ ], change[ ], supersede[ ] or replace[ ] an existing policy," holding that addition of new vehicle to existing policy does not require new rejection of UM coverage); *Makela v. State Farm*

---

**4.** The Sacketts concede in their brief that whether the issue is the waiver of stacked UM/UIM coverage or the waiver of UM/UIM coverage altogether, "the paramount question is the same": whether the "addition of a vehicle or a change in coverage ... trigger[s] a requirement to obtain new waivers." (Appellants' Brief at 21–22.)

**5.** We note, however, that an insured's choice with respect to stacking is not one of the

items required to be disclosed in Section 1791's notice provision.

**6.** Admittedly, the waiver of stacking is governed by Section 1738 of the MVFRL, whereas the waiver of UM/UIM coverage is governed by Section 1731. Nevertheless, a stacking waiver is a categorical waiver much like the waiver of UM/UIM coverage.

*Mut. Auto. Ins. Co.,* 147 Ill.App.3d 38, 100 Ill.Dec. 505, 497 N.E.2d 483 (1986) (addition of new vehicle to existing policy is akin to a renewal, thus no new rejection of UM coverage is required); *Pierce v. Allstate Ins. Co.,* 316 Or. 31, 848 P.2d 1197 (1993) (addition of vehicle to policy, deletion of vehicle, or replacement of one insured vehicle with another under same policy is not "issuance of policy" under statute requiring insurer to offer insured options of UM coverage up to limits); *El–Habr v. Mountain States Mut. Cas. Co.,* 626 S.W.2d 171 (Tex.App.1981) (original waiver of portion of UM coverage applied to vehicle later added to policy, and insurer had no duty to apprise insured as to availability of UM coverage upon addition of new vehicle); *Torgerson v. State Farm Mut. Auto. Ins. Co.,* 91 Wash.App. 952, 957 P.2d 1283 (1998) (addition of new vehicle alone does not create a new policy warranting new rejection of UIM coverage equal to liability limits). *But see Donaghey v. Cumis Ins. Soc'y,* 600 So.2d 829 (La.App.1992) (new rejection of UM coverage must be executed when vehicle is added to noncommercial policy); *Beauchamp v. Southwestern Nat'l Ins. Co.,* 746 P.2d 673 (Okla.1987) (addition of new, not substitute, vehicle to policy required new rejection of UM coverage).[7]

¶ 21 For all the foregoing reasons, we find that the trial court correctly held that Nationwide was not required to offer or obtain new stacking waivers from the Sacketts upon the addition of the Ford Windstar to their policy. Accordingly, we affirm the entry of summary judgment in favor of Nationwide.[8]

¶ 22 Order entering summary judgment **AFFIRMED.**

---

**7.** Some courts have held that the addition of a vehicle *along with other changes* warrants new UM/UIM waivers. *See State Farm Mut. Auto. Ins. Co. v. Arms,* 477 A.2d 1060 (Del. 1984) (addition of new vehicle together with changes in coverage were material changes necessitating new offer of UM/UIM coverage); *Allstate Ins. Co. v. Kaneshiro,* 93 Hawai'i 210, 998 P.2d 490 (2000) (substituting wife for husband she divorced, along with addition of vehicle to policy, constituted material changes warranting new UM/UIM waivers); *Torgerson, supra* (addition of new vehicle along with addition of new coverages, including UIM, which had been previously rejected, did constitute a new policy warranting new rejection of UIM coverage equal to liability limits).

**8.** In light of this determination, we need not address the Sacketts' final issue on appeal: whether the trial court was correct when it held that the MVFRL provides no remedy to the Sacketts for Nationwide's failure to obtain a new waiver of stacked UM/UIM coverage.