660 A.2d 1386

**Jennifer E. KIMBALL, Appellant,**

**v.**

**CIGNA INSURANCE COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued April 6, 1995.

Filed July 11, 1995.

144

Mark E. Milsop, Pittsburgh, for appellant.

Richard L. McMillan, Pittsburgh, for appellee.

Before POPOVICH, FORD ELLIOTT and BROSKY, JJ.

POPOVICH, Judge:

This case involves an appeal from the order (reduced to judgment[1]) of the Court of Common Pleas of Allegheny County denying the post-trial motions of the plaintiff/appellant, Jennifer E. Kimball, and limiting her uninsured motorist coverage to a maximum of $300,000.00 versus a claimed $900,000.00 with stacking.

We affirm in a case of first impression.

The facts are not in dispute: In 1983, the plaintiff was listed as a driver under her father's policy with Cigna Insurance Co. Even with the parents' divorce in 1984, the plaintiff's status remained unchanged under the policy, save that her mother was the only "named insured."

On December 6, 1990, the mother executed a "sign down" form reducing the uninsured/underinsured limits of coverage from $300,000.00 to $100,000.00. With the plaintiff's purchase of a vehicle in 1991, the "endorsement" portion of the policy added the plaintiff as a "named insured." However, at no time during the coverage period (which included two renewals of the policy) was the plaintiff informed by Cigna's agent that the uninsured/underinsured (limits of $100,000.00) could be

---

1. The order became appealable with its entry into the judgment docket on praecipe by the plaintiff. See Pa.R.App.P. 302(a).

carried at levels equal to the liability limit of $300,000.00. Thus, Cigna never obtained an executed "sign down" document from the plaintiff evidencing such an election in coverage.

On November 23, 1992, the plaintiff was injured by an uninsured motorist. When she attempted to recover under the uninsured provisions of her policy in an amount equal to the liability limits of $300,000.00, Cigna disputed her entitlement on the basis that the mother's execution of the "sign down" form (as a "named insured") bound the plaintiff to the same limits of coverage, i.e., $100,000.00 for uninsured claims.

After the submission of numerous pleadings, the parties agreed to have the case resolved by a judge upon stipulated facts. Argument and briefs were presented, after which the court held: 1) a single policy existed; 2) the plaintiff's mother was the "first" named insured with the plaintiff's name to follow; 3) the plaintiff's signature and use of the amended policy *required* the court to *assume* that the plaintiff read and comprehended its terms; 4) Cigna's agent did not conceal any pertinent information from the plaintiff precluding her from negotiating a separate policy in her name only; and 5) Pennsylvania law was satisfied when the "first" named insured [mother] executed a written sign-down. Accordingly, the court ruled that "the total amount of uninsured motorist coverage available to plaintiff ... from the policy issued by ... Cigna ... [wa]s $300,000.00." [2] This appeal followed and raises but a single argument; to-wit:

I. THE LOWER COURT ERRED IN DETERMINING THAT APPELLANT, A NAMED INSURED, WAS BOUND BY THE ELECTION OF REDUCED UNINSURED MOTORIST COVERAGE BY ANOTHER NAMED INSURED TO THE SAME POLICY, WHEN APPELLANT WAS ADDED TO THE POLICY AFTER SAID ELECTION, WAS NEVER INFORMED AS TO THE AMOUNT OF COVERAGE AVAILABLE AND

[2]. The plaintiff sought $900,000.00 under the stacking provisions of the Motor Vehicle Financing Responsibility Law (75 Pa.C.S.A. § 1738 (Supp.1994)), given the 3 insured vehicles in the household by Cigna.

NEVER EXECUTED A WRITTEN REQUEST FOR LOWER COVERAGE AS IS REQUIRED BY 75 PA. C.S.A. § 1734.

In responding to the appellant's contention, we begin with the observation that, in 1984, the No–Fault Act was repealed by the Motor Vehicle Financial Responsibility Law [3] (MVFRA) to allow for, inter alia, uninsured/underinsured motorist coverage equal to liability coverage. See 75 Pa.C.S.A. § 1731 (Supp.1994). To reject uninsured/underinsured motorist protection, the "first" named insured must be placed on notice of such a right (either at the time of application for original coverage or at the time of the first renewal). *Id.* at § 1791. Further, requests for uninsured/underinsured protection in amounts less than the limits of liability for bodily injury must be in writing (*id.* at § 1734) and evidenced by a written document prescribed by statute and executed by the "first" named insured. *Id.* at § 1731.

Those cases which have had occasion to interpret the MVFRL are limited to common pleas and federal court cases. Nonetheless, we sense a course to pursue from their reading. For instance, in *Liberty Mutual Fire Insurance Co. v. Lindsey,* 3 D. & C.4th 659 (York Cty., 1989), the court was confronted with the issue of whether the election of lower uninsured/underinsured coverage by one named insured (husband) was binding on the other named insured (wife). The court held so on the following basis: 1) the lower uninsured/underinsured limits were paid from joint accounts, which evidenced wife's actual knowledge, understanding and acceptance of benefits and limits selected; 2) insurer's *notice* to the husband and wife complied with Section 1791, raising a statutory *presumption* that the wife was advised of the benefits and limits available; 3) wife confirmed and ratified the husband's selection of lower limits by electing to stay covered and not seeking a separate policy—presumes that wife has knowledge of limits of liability; 4) no evidence that wife intended to accept higher limits other than lack of her signature on release form, which absence of "her signature was a

**3.** 75 Pa.C.S.A. § 1701 et seq. (Supp.1994).

mere oversight"; and 5) wife deferred to husband on matters of insurance. 3 Pa.D. & C.4th at 667–68. Accord *Hepler v. Liberty Mutual Fire Insurance Co.*, 7 D. & C.4th 521 (Cumberland Cty., 1990) (wife bound by the uninsured/underinsured limits requested in writing by husband); see also *U.S. Fidelity & Guaranty v. Franks*, 12 D. & C.4th 47 (Cumberland Cty., 1991) (named insured (father) can elect lower limits for "family member" (son, who was not listed as a "named insured" on policy)).

On the other hand, the District Court for the Eastern District of Pennsylvania in *Groff v. Continental Ins. Co.*, 741 F.Supp. 541 (1990), had to decide, among other things, whether Ms. Groff's husband effectively reduced their uninsured coverage so as to foreclose recovery by their son's estate.

The suit in *Groff* was instituted with the death of Groff's son by an uninsured motorist. Both parents were listed as "named insured" on a policy carrying $1,000,000.00 of uninsured coverage. Thereafter, Mr. Groff elected uninsured coverage of $35,000,00 and paid premiums for the lower coverage for the entire policy period, which encompassed the accident. Ms. Groff did not sign a similar document, but the insurer's representatives maintained that the wife was present when the husband executed the reduction form. Also, an amended policy was mailed to the Groff's residence and their account was credited for the premiums paid.

The District Court concluded that Mr. Groff acted knowingly and intelligently in reducing his uninsured coverage.[4] In doing so, the *Groff* Court wrote:

> First, for several years previously, the Groffs obtained the same level of uninsured motorist coverage, a single $35,000 limit, from other companies—Federal Kemper Insurance

---

**4.** The *Groff* Court stated, in dicta, that the wife's right to select coverage could not be waived by the husband's selection of lower coverage, each being a "named insured." However, this position was predicated upon a common pleas court case since repudiated by the jurist that issued it. See *Hepler v. Liberty Mutual Fire Ins. Co.*, 7 D. & C.4th 521, 526 (Cumberland Cty., 1990). Thus, we find unpersuasive that portion of *Groff* indicating that a named insured cannot waive another named insured's level of coverage.

Company and Utica Mutual Insurance Company. Second, *the Groffs only paid the premium for the lower amount of uninsured motorist coverage.* In fact, they received a reduction in their premiums reflecting Raymond Groff's election of lower coverage. Third, *the Groffs never questioned the level of their uninsured motorist coverage, after receiving the endorsement amending the policy and incorporating the Pennsylvania Supplemental Automobile Application signed by Raymond Groff into the policy by reference.* Finally, when the Groffs added vehicles to their insurance during the police period, the forms they received from Continental also noted that the uninsured motorist coverage was a single $35,000 limit.

741 F.Supp. at 548 (Emphasis added); cf. *Nationwide Insurance Co. v. Resseguie,* 782 F.Supp. 292, 294 (M.D.Pa.1992), aff'd in part, 980 F.2d 226 (3rd Cir.1992) (no one but "named insured" can reduce uninsured/underinsured coverage; where one of two "named insured" requests change in limits of coverage, the request held to bind the other "named insured").

At bar, albeit the plaintiff was not listed as a "named insured" at the time her mother executed a "sign down" form to reduce uninsured/underinsured coverage, she was a "named insured" when the "endorsement" amending the policy and listing her as a "named insured" was received at the Kimball household. Specifically, the amendment indicated in clear language that the uninsured motorist coverage stood at $100,-000.00 and no higher. However, no action was taken by the plaintiff to rectify this level of coverage. She could have increased coverage under her mother's policy (with accompanying premium increases) or secured her own separate policy should her mother not be amenable to the increased coverage and additional cost associated therewith. The plaintiff took no action on either front.

Moreover, the policy limits remained in effect for two renewal periods without any effort on the plaintiff's part to increase coverage beyond the $100,000.00 limit for uninsured/underinsured insurance. Rather, the premiums (at the lower rate) continued to be paid without question or complaint

to the Cigna agent about the level of coverage. Under this scenario, as is consistent with 75 Pa.C.S.A. § 1791, the payment of the renewal premiums (which here occurred at least twice while the plaintiff was a "named insured") "evidences [the plaintiff's] actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits ... selected." *Id.; Resseguie,* supra; *Lindsey,* supra.

Accordingly, if the plaintiff did not accept her mother's election, upon receipt of the policy with the lower limit and lower premiums, she could have contacted the insurance company, informed them of the dissatisfaction with the amount of uninsured/underinsured coverage and requested it be corrected or obtained another policy on her own. Instead, the plaintiff accepted the policy with the lower limits without complaint and permitted payment of the lower premium without incident. To find that the plaintiff is not bound by her mother's election and remaining silent on the issue of increased coverage, while reaping the benefits of reduced rates, would be to reward inaction. Here, the plaintiff had the means and opportunity to avoid any insurance shortfall, but she took no action to remedy the matter.

Therefore, we will not act in the plaintiff's stead and do what she could have done for herself once she received the endorsement sheet reflecting coverage below that which she now claims was never intended. Further, we will not amend a contract absent any evidence of fraud or mutual mistake of fact. Accordingly, under the particular facts of this case, we find no fault with the court's order.

Judgment affirmed.

FORD ELLIOTT, J., files a dissenting statement.

FORD ELLIOTT, Judge, dissenting:

Despite my agreement with much of the majority's analysis, I must respectfully dissent from the majority's conclusion that a party added to a policy as a named insured after another

named insured has executed a sign-down in uninsured motorist benefits is bound by that sign-down.

I agree with the majority that, where a first named insured has executed a valid sign-down under 75 Pa.C.S.A. § 1734, any other individuals who are named insureds at the time the sign-down is executed are bound by the terms of the sign-down. This analysis comports with the rule of statutory construction that requires us to construe sections of a statute so as not to promote or further an absurd result. *Crosby by Crosby v. Sultz*, 405 Pa.Super. 527, 540–41, 592 A.2d 1337, 1344–45 (1991). Section 1731, which allows an insured to reject uninsured motorist coverage altogether, only requires the signature of the first named insured; therefore, to require signatures of other named insureds under § 1734, in which only a reduction of uninsured motorist benefits is contemplated, would be to countenance such an absurd result.

In addition, I am comfortable with the fiction that other parties to an insurance contract (other named insureds) are presumed to have acquiesced in its terms, and even in additions or deletions to its terms, because they are presumed to have been aware of the terms at the time the contract was formed or altered. Nevertheless, it is noteworthy that in every case cited by the majority in which such a result was reached, the court based its determination that other named insureds were bound by the sign-down or waiver on the particular facts and circumstances of the case rather than upon a clear application of the rules of statutory interpretation. *See, for example, Liberty Mutual Fire Insurance Co. v. Lindsey*, 3 D. & C.4th 659 (York Cty., 1989), *affirmed*, 414 Pa.Super. 658, 598 A.2d 1337 (1991) (wife named insured is bound by uninsured/underinsured limits requested in writing by husband). *Accord Hepler v. Liberty Mutual Fire Insurance Co.*, 7 D. & C.4th 521 (Cumberland Cty., 1990) (*Hepler II*). *But see Groff v. Continental Insurance Co.*, 741 F.Supp. 541 (E.D.Pa.1990) (any reduction of uninsured motorist coverage in writing by husband was not effective as to wife who was also named insured).

The instant case is factually distinct, however, from these cases. Appellant in the case before us was added as a named insured *after* her mother executed a sign down in uninsured motorist benefits. Prior to appellant's purchase of a car in March of 1991, appellant had merely been an insured, as a member of her mother's household who operated a motor vehicle registered in her mother's name. According to the terms of the policy, however, appellant's new car, registered in her name, could only be covered by the policy if she became a named insured. Her addition to the policy as a named insured thus elevated her status from that of third party beneficiary of the policy, as were other members of the household who drove cars registered in mother's name, to a party to the contract itself. As to the coverage on appellant's own car, her rights under the policy were thus distinct from those of her mother. As such, she was entitled to receive notice of her statutory right to purchase up to $300,000 of uninsured motorist coverage. Likewise, appellee was required to obtain a written sign-down from appellant as required by § 1734.

The sections of the Motor Vehicle Financial Responsibility Act at issue place upon the insurer the burden of notifying an insured of his or her right to obtain an amount of uninsured motorist coverage equal to the liability insurance provided by the policy. *Botsko v. Donegal Mutual Insurance Co.*, 423 Pa.Super. 41, 45, 620 A.2d 30, 32 (1993) (if insurer does not follow statute governing notice of available benefits and limits respecting uninsured and underinsured motorist coverage, statutory mandate regarding such coverage may be complied with only by including coverage or by obtaining affirmatively expressed rejection in writing from insured). I cannot agree, therefore, that appellant in the instant case is bound by her mother's sign-down. Having failed to notify appellant of her rights, or to obtain a waiver of those rights in writing as required by statute, appellee should be required to provide uninsured motorist benefits to appellant in the amount equal to the limits of liability for bodily injury under the terms of the policy upon which she is a named insured.