### Donohue v. State Farm Mutual Insurance Company

*Joseph P. Stanton,* for plaintiffs.
*Brett Messinger,* for defendant.

BONAVITACOLA, *S.J.,* August 2, 2005—

## INTRODUCTION

The sole issue presented by this declaratory judgment action is whether the plaintiffs are bound by the apparent election of plaintiff John Donohue, the first named insured under the automobile insurance policy herein at issue, to reduce his underinsured motorist liability cov-

erage from $50,000 per person/$100,000 per incident (the "first-party" coverage limits he selected) to $15,000 per person/$30,000 per incident.

On August 27, 1996, plaintiff Joan Donahue, daughter of John and Claire Donahue, was involved in an automobile accident and sustained significant injuries. With State Farm's consent, she settled with the other driver involved in the accident for his policy limits, $25,000, and then made a claim against State Farm for underinsured motorist benefits under the terms of her parents' State Farm policy.

The policy then insured two vehicles, and—because the Donohues had elected to "stack" the underinsured motorist coverage—State Farm paid double the stated policy limit, or $30,000, to Joan Donahue. The plaintiffs then filed this declaratory judgment action in an effort to "reform" their policy, to raise the underinsured motorist coverage limit to $50,000,[1] which—after stacking— would have made another $70,000 of benefits available to Joan Donahue.

This case was previously tried, without a jury, by my former colleague, the Honorable Gene Cohen, who directed a verdict for the defendant, but then awarded a new trial and recused himself. The matter was then reassigned to me.

I conducted a non-jury trial on November 15, 2004, following which I directed a verdict for the defendant. The plaintiff filed a timely post-trial motion, which I

---

1. The defendant contends that "reformation" is not an available remedy under the facts of this case; terms aside, it is clear that I could have relieved the plaintiffs of the consequences of their apparent election, had the facts supported doing so.

denied by order dated March 17, 2005. Due to a technical malfunction, my staff was unable to telecopy the order to the plaintiff's attorney, and for some reason no hard copy was mailed.[2] I therefore entered a new order, identical to the previous one, on April 28, 2005, and this timely appeal followed.

## DISCUSSION

Ordinarily, insurers are required to provide underinsured motorist coverage to an insured in the same amount as the "first-party" coverage purchased by the insured. 75 P.S. §1731. An insured may request (in writing), and an insurer may provide (upon such written request), underinsured motorist coverage in an amount less than that of the first-party benefits available under the policy of insurance. 75 P.S. §1734.

In order for such a "sign-down" of coverage to be effective, the insured must first be given notice of the availability of the higher limits. *Lewis v. Erie Insurance Exchange,* 568 Pa. 105, 793 A.2d 143 (2002), quoting with approval, *National Union Fire Insurance Company v. Irex Corp.,* 713 A.2d 1145 (Pa. Super. 1998).

If it is shown that a named insured has received the "Important Notice" set forth in 75 P.S. §1791, "it shall be presumed that the insured has been advised of the benefits and limits" of insurance coverages available for purchase as required by *Lewis* and *Irex.*

The election of the first named insured is binding on all other persons insured under the same policy. *Kimball*

---

2. When the question arose, it was clear from the electronic receipt generated by the telecopier machine in my chambers that the order had not been transmitted.

*v. Cigna Insurance Company,* 443 Pa. Super. 143, 660 A.2d 1386 (1995).

There is no dispute that John Donahue acknowledged receipt of an important notice (in the form then prescribed by section 1791) on June 8, 1988, or that, on the same date, he executed a "sign-down" form requesting lower uninsured and underinsured motorist coverages on his State Farm policy, also in the form then required by law.[3]

There is also no dispute that Mr. Donahue executed another "sign-down" form in 1994, when he added the Dodge Omni that was involved in the accident to the policy, and that he again did so in 1999—three years *after* his daughter's accident.

Section 1791 specifically states that the "Important Notice" is required only "upon application for [the] original policy . . . ." The notice need not be given again every time that coverage is changed.

Furthermore, 75 P.S. §1731(c.1), added in 1990, provides that "[a]ny person who executes a waiver [of uninsured or underinsured coverage] shall be precluded from claiming liability of any person based upon inadequate information." The plaintiffs thus cannot avoid the effect of the waivers that Mr. Donahue signed, by arguing that he was not provided with sufficient information to fairly evaluate his options, or by claiming that he did not read or did not understand the waiver forms. *Kline v. Old Guard Insurance Company,* 820 A.2d 783 (Pa. Super. 2003).

Finally, there is no dispute that Mr. Donahue paid renewal premiums on his State Farm policy for a number of years before the accident occurred. Under the law, payment of a renewal premium constitutes acknowledg-

---

3. At that time, the two coverages were treated as one.

ment of receipt of the information contained in the "Important Notice," and of the coverages selected under the policy. 75 P.S. §§1791, 1791.1.

## CONCLUSION

The plaintiffs are bound by Mr. Donahue's election, and there is no basis upon which that election may be set aside.

For the foregoing reasons, my decision must be affirmed.[4]

---

4. There is no need to address the other issues raised by the plaintiffs' post-trial motion; it is beyond reasonable dispute that the microfilmed copies of the policy forms were properly admitted into evidence, regardless of whether or not the "law of the case" doctrine applied, and the opinion in *Blood v. Old Guard Insurance Company,* cited at length by the plaintiffs, has since been withdrawn and the case is scheduled for reargument in September 2005.