J-A15013-23

2023 PA Super 150

VALERIE GOLIK                          :    IN THE SUPERIOR COURT OF
                                       :           PENNSYLVANIA
                                       :
            v.                         :
                                       :
                                       :
                                       :
ERIE INSURANCE EXCHANGE                :
                                       :
            Appellant                  :    No. 1110 WDA 2022

Appeal from the Judgment Entered August 31, 2022
In the Court of Common Pleas of Allegheny County
Civil Division at GD-20-011632

BEFORE:    MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.*

OPINION BY MURRAY, J.:                          **FILED: AUGUST 7, 2023**

Erie Insurance Exchange (Appellant) appeals from the judgment entered

in favor of Valerie Golik (Mrs. Golik) in this declaratory judgment and breach

of contract action.  For the reasons discussed below, we vacate the judgment

in favor of Mrs. Golik, and remand to the trial court for entry of judgment in

favor of Appellant.

The trial court detailed the underlying facts and procedural history as

follows:

> In 1992, [Mrs. Golick's husband, Mark Golick (Mr. Golick),]
> received an automobile insurance policy ("the Policy") from
> [Appellant] through the Fisher Agency ("Fisher").  NJT 32:6-12.
> He was the only individual that the Policy covered at that time,
> and he only had one vehicle on the Policy as well.  *Id.* at 32:18-
> 23.  In 1998, Mr. Golick replaced the vehicle on the Policy with a
> different one, and the Fisher Agency subsequently sent him a
> stacking waiver.  *Id.* at 32:24-34:9.  He signed the 1998 waiver.

_____

* Retired Senior Judge assigned to the Superior Court.

*Id.* The Policy still only covered himself and one vehicle. *Id.* at 33:15-19.

Following the Goliks' marriage in 2000, Mrs. Golik and her vehicle were added to the Policy in 2001. *Id.* at 22:2-9. The spouses each testified that this was the first time the Policy covered multiple persons and vehicles. *Id.* at 22:22-25, 34:5-8. Mr. Golick did not receive any stacking waivers or discuss stacking insurance with their agent in 2001 after Mrs. Golick was added to the Policy. *Id.* at 35:9-19.

In 2004, [Appellant] or Fisher mailed stacking waivers to the Goliks' residence that Mr. Golik ultimately signed. *Id.* at 35:24-36:17. No changes had been made to the Policy. *Id.* at 24:6-8. Mr. Golik testified that he believes the waivers had been addressed to him only, and upon reviewing the documents at trial, he confirmed that only his name appeared printed on the waivers themselves. *Id.* at 36:18-23. He had no specific recollection of sharing the waivers with Mrs. Golik, but he testified that it is his habit to share mail with his wife whenever it is addressed to [] both []. *Id.* at 37:3-22. He further testified that he does not recall any cover letter or instructions being included with the waivers. *Id.* at 37:15-19. Mrs. Golik testified that she also does not recall either seeing the stacking waivers or having any conversations with anyone about stacked motor vehicle insurance in 2004. *Id.* at 24:11-24.

On October 21, 2019, Mrs. Golik was severely injured in a motor vehicle accident when an uninsured motorist made an errant turn into the path of her vehicle. *Id.* at 18:7-20:7. She subsequently filed a claim with [Appellant] for [uninsured motorist (UM)] benefits, *id.* at 25:5-10, believing at the time that the Policy provided $100,000 per accident in UM coverage. *Id.* 21:23-22:1. [Appellant] responded with a copy of the 2004 stacking waiver three months later, *id.* at 26:13-27:2, and subsequently tendered a $50,000 payout per the Policy, which Mrs. Golik did not accept. *Id.* at 30:1-3. This lawsuit ensued.

Trial Court Opinion, 8/11/22, at 2-3 (unnumbered) (paragraph designations omitted).

Mrs. Golick filed the instant action on November 10, 2020. Mrs. Golick averred Appellant "failed its statutory obligation to present her with the opportunity to stack limits of [UM] and underinsured motorist coverage [UIM.]" *Id.* at 1 (unnumbered). Mrs. Golick claimed she was entitled to $100,000 in stacked UM coverage. *Id.*

The trial court commenced a non-jury trial on March 1, 2022. On August 11, 2022, the court entered a verdict in favor of Mrs. Golick in the amount of $100,000. Appellant filed post-trial motions, which the trial court denied on August 29, 2022. On August 31, 2022, the trial court entered judgment in favor of Mrs. Golick. This timely appeal followed.[1]

Appellant raises three issues for review:

> 1. Whether the trial court erred in determining [Mrs. Golick] could recover "stacked" uninsured motorist benefits despite the presence of a [UM] benefits "stacking waiver" on the subject auto insurance policy executed by the first named insured consistent with the language of 75 Pa.C.S. § 1738?
>
> 2. Whether the trial court erred as a matter of law in determining that 75 Pa.C.S. § 1738 imposes additional requirements on insurers beyond securing a statutorily-prescribed "stacking waiver" signed and dated by the first named insured on the policy to preclude recovery of "stacked" benefits by [Mrs. Golick]?
>
> 3. Whether the trial court erred in disregarding *stare decisis* in **Rupert v. Liberty Mut. Ins. Co. [Rupert I]**, 781 A.2d 132 (Pa. 2001), wherein a unanimous Supreme Court reasoned that a statutorily-prescribed "stacking waiver" signed and dated

---

[1] The trial court did not order Appellant to file a Pa.R.A.P. 1925(b) statement and did not issue a Rule 1925(a) opinion.

by the current first name insured effectively binds all other named insureds?

Appellant's Brief at 6.

As Appellant's issues are related, we address them together. We begin

by recognizing:

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue ... concerns a question of law, our scope of review is plenary.

*Metro Real Estate Investment, LLC v. Bembry*, 207 A.3d 336, 339 (Pa.

Super. 2019) (citations omitted).

With respect to a declaratory judgment action involving insurance policy

coverage,

the proper construction of an insurance policy is resolved as a matter of law to be decided by the court in a declaratory judgment action. Hence, as with all issues of law, our review is *de novo*. Our standard of review in a declaratory judgment action is narrow. We review the decision of the trial court as we would a decree in equity and set aside factual conclusions only where they are not supported by adequate evidence. We give plenary review, however, to the trial court's legal conclusions. We are limited to determining whether the trial court clearly abused its discretion or committed an error of law.

*Swarner v. Mutual Ben. Group*, 72 A.3d 641, 644 (Pa. Super. 2013)

(citations and quotation marks omitted).

This case involves interpretation of Section 1738 of the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S.A. §§ 1701-1799.7.  Section 1738 addresses stacking of UM/UIM coverage and waiver of stacked coverage. Section 1738 provides:

> **(a) Limit for each vehicle.**--When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured.  The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.
>
> **(b) Waiver.**--Notwithstanding the provisions of subsection (a), **a named insured** may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.
>
> **(c) More than one vehicle.**--**Each named insured purchasing uninsured or underinsured motorist coverage** for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b).  The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.
>
> **(d) Forms.**—
>
>> (1) The **named insured** shall be informed that he may exercise the waiver of the stacked limits of uninsured motorist coverage by signing the following written rejection form:
>>
>> UNINSURED COVERAGE LIMITS
>>
>> By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy **for myself and members of my household** under which the limits of coverage available would be the

sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. … I understand that my premiums will be reduced if I reject this coverage.

….

## Signature of First Named Insured

….

(2) The named insured shall be informed that he may exercise the waiver of the stacked limits of underinsured motorist coverage by signing the following written rejection form:

UNDERINSURED COVERAGE LIMITS

By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy **for myself and members of my household** under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy….

….

## Signature of First Named Insured

….

**(e) Signature and date.**--The forms described in subsection (d) must be signed by the **first named insured** and dated to be valid. Any rejection form that does not comply with this section is void.

75 Pa.C.S.A. § 1738 (emphasis added).

When interpreting the MVFRL:

We are guided in our analysis by the Statutory Construction Act of 1972 (Statutory Construction Act), 1 Pa. C.S. §§ 1501-1991,

which provides that the object of all statutory interpretation "is to ascertain and effectuate the intention of the General Assembly." 1 Pa. C.S. § 1921(a). Generally, the plain language of the statute "provides the best indication of legislative intent." **Miller v. Cnty. of Centre**, 643 Pa. 560, 173 A.3d 1162, 1168 (2017). If the statutory language is clear and unambiguous in setting forth the intent of the General Assembly, then "we cannot disregard the letter of the statute under the pretext of pursuing its spirit." **Fletcher v. Pa. Prop. & Cas. Ins. Guar. Ass'n**, 603 Pa. 452, 985 A.2d 678, 684 (2009) (citing 1 Pa. C.S. § 1921(b)). In this vein, "we should not insert words into [a statute] that are plainly not there." **Frazier v. Workers' Comp. Appeal Bd. (Bayada Nurses, Inc.)**, 616 Pa. 592, 52 A.3d 241, 245 (2012). When the statutory language is ambiguous, however, we may ascertain the General Assembly's intent by considering the factors set forth in Section 1921(c) of the Statutory Construction Act, 1 Pa. C.S. § 1921(c), and other rules of statutory construction. **See Pa. Sch. Bds. Ass'n, Inc. v. Pub. Sch. Emps. Ret. Bd.**, 580 Pa. 610, 863 A.2d 432, 436 (2004) (observing that "other interpretative rules of statutory construction are to be utilized only where the statute at issue is ambiguous"). Additionally, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage," though "technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in [the Statutory Construction Act] shall be construed according to such peculiar and appropriate meaning or definition." 1 Pa. C.S. § 1903(a). "We also presume that 'the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable,' and that 'the General Assembly intends the entire statute to be effective and certain.'" **Berner v. Montour Twp. Zoning Hearing Bd.**, 655 Pa. 137, 217 A.3d 238, 245 (2019) (quoting 1 Pa. C.S. § 1922(1)-(2)).

**Goodwin v. Goodwin**, 280 A.3d 937, 943-44 (Pa. 2022).

Here, the trial court identified the issue as: "Whether, under Section 1738 of the [MVFRL], only the signature of the first named insured is needed to execute a valid waiver of stacked UM coverage." Findings of Fact and Conclusions of Law, 8/11/22, at 3. The trial court concluded the answer was "no." **Id.** In so doing, the trial court found there was no "binding case law

that answer[ed] the legal issue in this matter." *Id.* The trial court turned to the language of Section 1738 and opined:

> Because there is no relevant, binding case law that interprets Section 1738, the [trial c]ourt now interprets Section 1738 itself and finds that its plain language is ambiguous as to whether the signature of the first named insured alone is sufficient to execute a valid waiver of stacked coverage. In light of the tools of statutory construction that Pennsylvania courts utilize in such cases, the [trial c]ourt here ultimately concludes that Section 1738 has two discrete requirements that must be met to execute a valid stacking waiver: a) The signature of the first named insured on the waiver form[; a]nd b) **evidence of a reasonable effort on the insurer's part to provide each named insured the opportunity to waive stacked coverage**.

*Id.* at 6 (paragraph numbers and some emphasis omitted, some emphasis in original).

The trial court focused on Section 1738's alternating use of "named insured" and "first named insured," noting correctly that neither term is defined in the statute. *Id.* at 7-8. The trial court stated:

> At first blush, a cursory reading of Section 1738 seems to unambiguously suggest that the first named insured's signature is all the statute requires for a valid UM or UIM stacking waiver.
>
> ….
>
> The plain language of [subsections 1738(d) and (e)], standing alone, strongly point to the conclusion that the General Assembly's intent was to require only the first named insured's signature to execute a valid stacking waiver. Not only do both subsections make zero reference to any other named insured's signature, but subsection (d)'s language "for myself and members of my household" further suggests that our legislature intended to give the first named insured unilateral power to waive stacked coverage on behalf of all others on the policy.

Section 1738(c), however, muddies the waters by unambiguously stating that "**[e]ach named insured** purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage." 75 Pa. C.S. § 1738(c) (emphasis added). That language flies in the face of the plain meaning of subsections (d) and (e) to suggest the legislature intended for each named insured to have an opportunity to waive stacking before a waiver would be finalized.

….

Because the plain language of Section 1738 leads to two plausible but contradictory interpretations, the [trial c]ourt finds the statute ambiguous on its face as to what it requires for a valid waiver of stacked UM or UIM coverage.

*Id.* at 6-8 (paragraph numbers omitted, emphasis in original). Upon review, we are constrained to disagree.

Although there is no case law directly on point, our Supreme Court's split decision in ***Rupert I*** offers meaningful guidance. In ***Rupert I***, Cynthia Winters (Winters) purchased automobile insurance in 1984, listing her boyfriend Timothy Rupert (Rupert) as a "driver." ***Rupert I***, 781 A.2d at 132. The couple married in 1988. *Id.* In 1991, Winters signed a waiver of stacked UM coverage. In 1993, Winters added Rupert to the policy as a "named insured." *Id.* In 1997, Winters died, and Rupert removed Winters' name from the policy; he subsequently renewed the policy. *Id.* In July 1997, Rupert was seriously injured in a motor vehicle accident. *Id.*

Rupert filed a federal court action, arguing the "waiver form signed by [Winters] was no longer a valid waiver because, at the time of [Rupert's] accident, it did not conform" with Section 1738(e), as Winters was no longer

the first named insured. *Id.* at 135. The United States Court of Appeals for the Third Circuit certified the case as a question of law to the Pennsylvania Supreme Court. *Id.* at 132. After one justice recused, the Pennsylvania Supreme Court was evening divided. *Id.* at 132.

In an opinion authored by Justice Zappala and joined by two justices, Justice Zappala opined: "[F]or purposes of Section 1738, the signature of the first named insured on a valid waiver at the inception of the policy is evidence that each named insured under the policy was fully aware of the options regarding stacked policy limits." *Id.* at 135. Pertinently, Justice Zappala recognized the statute's alternating use of the terms "first named insured" and "named insured," but found no resulting ambiguity. *Id.* Justice Zappala reasoned:

> At first blush, Section 1738 appears to interchange the terms "first named insured" and "named insured". Section 1738(c) allows each named insured the option of waiving stacked coverage. Section 1738(c) also states that premiums for "an insured" should reflect the difference in cost. **I see no conflict in terms here**, as each named insured must categorically be an insured. Conversely, any insured that is not a named insured is not entitled to the waiver option provided in Section 1738(b).
>
> Pursuant to Section 1738(d), each named insured must be informed of the option to waive stacked coverage. The statute mandates the notification be presented in the specific manner of the prescribed form described in Section 1738(d)(1). That form calls only for the signature of the first named insured. Likewise, Section 1738(e) also mandates the signature of the first named insured. My reading of the plain meaning of Section 1738(d) and (e) is **that the signature of the first named insured evidences the insurer's fulfillment of its obligation of offering and informing the named insured of his or her right to waiver.**

- 10 -

*Id.* (emphasis added).

Justice Cappy, also joined by two justices, reached a different conclusion, opining: "In light of the legislative goal of ensuring knowledgeable rejection of coverage, and the conclusive effect of the first named insured's signature upon other insureds, it is of paramount importance that any new **first named insureds** receive the notice prescribed by § 1738." *Id.* at 136 (emphasis added).  While disagreeing with Justice Zappala's conclusion, Justice Cappy did not disagree that the signature of the first named insured is sufficient to meet the requirement that other "named insureds" be given notice of the waiver.  *Id.* at 135-36.  Justice Cappy wrote:

> The legislature placed the burden of obtaining a valid rejection of stacked coverage on the insurance company: The rejection forms in § 1738(d) must be signed and dated by the first named insured, or else the rejection of stacked coverage is void.  75 Pa.C.S. § 1738(e).  **It is evident that the General Assembly sought to ensure that policyholders would be given full information regarding availability of stacked coverage before deciding whether or not to reject it.** *Cf. Salazar v. Allstate Insurance Co.*, 549 Pa. 658, 702 A.2d 1038, 1044 (1997) (sections 1731, 1791 and 1791.1 describe information that insurer must provide "in order that the insured may make a knowing and intelligent decision on whether to waive [uninsured motorists] benefits coverage.").
>
> The first named insured's signature on the form rejects "coverage under the policy for myself and members of my household ...."  75 Pa.C.S. § 1738(d).  **By employing this language, the legislature adopted the fiction of "constructive knowledge" as to all other insureds-that is, if the first named insured rejected stacked coverage, then it would be presumed that all other insureds had knowledge of the option[] and acquiesced in the rejection of coverage.**

> **Thus, notice to the first named insured is all that the statute requires.**

*Id.* (emphasis added).

> The Third Circuit adopted Justice Zappala's reasoning, stating:

> The Pennsylvania General Assembly enacted the [MVFRL] "in large part" to check the rapidly rising cost of automobile insurance. *Huber v. Erie Ins. Exchange*, 587 A.2d 333, 334 (Pa. Super. 1991). The underlying aim of the MVFRL is "to provide broad coverage to assure the financial integrity of the policyholder." *Danko v. Erie Ins. Exch.*, 630 A.2d 1219, 1222 (Pa. Super. 1993), *aff'd*, 649 A.2d 935 (Pa. 1994). Accordingly, Pennsylvania courts have held that "the MVFRL is to be construed liberally to afford the greatest possible coverage to injured claimants." *Sturkie v. Erie Ins. Group*, 595 A.2d 152, 157-58 (Pa. Super. 1991). Courts should refrain, however, from rewriting the MVFRL "'under the pretext of pursuing its spirit.'" *Wolgemuth v. Harleysville Mut. Ins. Co.*, 535 A.2d 1145, 1151 (Pa. Super. 1987) (quoting 1 Pa.C.S. § 1921(b)).

*Rupert v. Liberty Mut. Ins. Co. [Rupert II]*, 291 F.3d 243, 246 (3d. Cir. 2002) (citations modified).[2]  In adopting Justice Zappala's view, the Third Circuit reasoned that Section 1738 "does not explicitly require the valid waiver form be signed by the **current** first named insured." *Id.* at 247 (emphasis in original).  The court agreed "individuals added to a policy as named insureds subsequent to the execution of a stacking waiver, such as [Rupert], will receive adequate notice of the stacking waiver through the first named insured." *Id.*  The Third Circuit emphasized that Section 1738(c) supported

---

[2] Pennsylvania Courts "may look to federal case law for its persuasive value." *Rudalavage v. PPL Elec. Utils. Corp.*, 268 A.3d 470, 479 n.7 (Pa. Super. 2022) (citation omitted).

- 12 -

this interpretation because it stated that each "named insured **purchasing** … coverage … shall be provided with the opportunity to waive the stacked limits of coverage." *Id.* at 248 (citation omitted, emphasis in original).

While neither *Rupert I* nor *Rupert II* is binding, both decisions are highly instructive, particularly when read with prior Pennsylvania case law. Our Courts have long held that third parties, drivers, and named insureds are bound by the decisions of the first named insured.

In *Kimball v. Cigna Ins. Co.*, 660 A.2d 1386 (Pa. Super. 1995), a daughter was identified as a "driver" under her father's automobile insurance policy. *Id.* at 1386-87. The parents divorced in 1984, and the mother replaced the father as the only "named insured" on the policy. *Id.* at 1387. In 1990, the mother executed a form reducing the UM/UIM coverage limits. *Id.* Although daughter was identified as a "named insured" under the policy in 1991, rather than a "driver", the daughter never executed documentation regarding the reduction in UM/UIM coverage limits. *Id.* The daughter was injured in an accident with an uninsured motorist and sued. *Id.* The insurance company argued the daughter was bound by the reduction in coverage form signed by her mother; the trial court agreed. *Id.*

On appeal, this Court discussed prior case law, observing that most of the cases were "limited to common pleas and federal court cases." *Id.* at 1387. However, we discerned a pattern. We ascertained that courts found other named insureds or drivers to be bound by the decisions of the first

named insured, absent evidence that the named insureds or drivers affirmatively acted to either increase the coverage and/or sought to purchase their own policy. *Id.* at 1387-89. Thus, this Court held that where the daughter took "no action … to rectify this level of coverage", she was bound by the actions of the first named insured. *Id.* at 1389.

In *General Acc. Ins. Co. of America v. Parker*, 665 A.3d 502 (Pa. Super. 1992), we addressed whether a third-party beneficiary of an insurance policy was bound by the policyholder's waiver of UM benefits. The plaintiff argued that because she was "not a resident relative of the policy holder, neither [insurer] nor their named insured [could] reject [UM] coverage on her behalf." *Id.* at 504. We disagreed, holding that the plaintiff's "rights, as a third party beneficiary, are … subject to the same limitations in the policy as … the policy holder." *Id.*

In *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634 (3d Cir. 2000), the plaintiff married Saverio Buffetta (Buffetta) in 1979. *Nationwide Mut.*, 230 F.3d at 635. In 1981, Buffetta obtained the insurance policy and subsequently added the plaintiff to the policy. *Id.* The plaintiff and Buffetta divorced in 1995. *Id.* at 636. Prior to the divorce, Buffetta elected lower coverage limits for UM/UIM. *Id.* Following the divorce, Buffetta transferred the policy to the plaintiff, who requested the policy be placed in her name. *Id.* The plaintiff never signed any authorization regarding the lower UM/UIM limits. *Id.* In 1997, the plaintiff's father, who resided with the plaintiff, was

killed in a motor vehicle accident. *Id.* The plaintiff filed suit, arguing her UM/UIM coverage should not be limited to the lower amount because "she never executed a writing for that amount[.]" *Id.* The Third Circuit disagreed. *Id.* at 640-42.

Noting plaintiff's situation was "not precisely the situation in *Kimball*," the Third Circuit stated:

> [D]rawing on the Pennsylvania Superior Court's repeated references to **a later named insured's being bound by having understood the policy limits and acquiesced in them by paying lower premiums**, we conclude that the instant factual setting is sufficiently analogous to *Kimball* to require the same result. …
>
> While we concede that a policy argument could be made to the effect that a new named insured should always have his or her voice count as to whether a reduced uninsured motorist coverage is requested, this is not evident in the [MVFRL], nor was it expressed in *Kimball*. … [T]he statute requires only that a waiver form be provided upon issuance of a policy. There is no statutory requirement that an insured be given a reduction authorization form without the insured's having requested one. The [MVFRL] is written in permissive terms, leaving it to a named insured, who "may" request reduced coverage. The option exists to request such a reduction and, we submit, *Kimball* was decided on the basis that a later named insured, upon being added to the policy, **could have notified the insurance company that she did not want to be bound by another's election of reduced coverage**.

*Id.* at 641 (footnote omitted, emphasis added).

The above cases suggest a named insured, even when subsequently added to a policy, is presumed to have known about available options and is bound by the first named insured's election of lesser coverage, unless the insured takes an affirmative step to change the coverage. *See Rupert I*, 718

- 15 -

A.2d at 135-36; ***General Acc. Ins. Co.***, 665 A.2d at 304-05; ***Kimball***, 660 A.2d at 1388-89. ***See also Rupert II***, 291 F.3d at 247-48; ***Nationwide Mut. Ins. Co.***, 230 F.3d at 640-42.

Here, Mr. Golick purchased the Policy in 1992, and executed a stacking waiver in 1998. Trial Court Opinion, 8/11/22, at 2 (unnumbered). The parties married in 2000 and added Mrs. Golick to the Policy in 2001; Mr. Golick executed a second stacking waiver in 2004. ***Id.*** The Golicks continued to pay reduced premiums for unstacked UM/UIM insurance. N.T., 3/1/22, at 31-32, 51. Mr. Golick, the first named insured, affirmed his execution of the stacking waiver. ***Id.*** at 40. He admitted his annual policy declaration sheets changed his coverage status from stacked to unstacked after he signed the waiver. ***Id.*** at 41-51. Mr. Golick claimed he did not understand what he was signing. ***Id.*** However, he acknowledged he never asked for assistance or clarification, but signed and returned the forms. ***Id.*** at 51.

Mrs. Golick testified that she was aware Appellant provided UM/UIM coverage and she and Mr. Golick were current on their premiums at the time of the accident. ***Id.*** at 21. Mrs. Golick stated she never signed or heard about the stacking waivers. ***Id.*** at 23.

The record reflects the Golicks enjoyed the benefit of reduced premiums for more than 20 years. ***See id.*** at 51. The record also confirms that despite claiming he did not understand the waiver, Mr. Golick signed it in 1998, and

again in 2004, without asking for any explanation or assistance. *See id.* at 40-51; Trial Court Opinion, 8/11/22, at 2. Prior to, and for approximately one year after marriage, Mrs. Golick was insured under a separate policy. N.T., 3/1/22, at 22-23. During the subsequent 18 years when Mrs. Golick was insured under the joint policy, she took no affirmative steps to request a change to the policy to stack the insurance or obtain a separate policy. *See id.* at 23-30. Consistent with the evidence and foregoing case law, we conclude that Mrs. Golick had constructive knowledge of the stacking waiver and is bound by the signature of the first named insured, Mr. Golick, on the stacking waiver.

Even if we were not persuaded by the above case law, we would not find Section 1738 of the MVFRL ambiguous. The trial court acknowledged that the plain language of subsections 1738(d) and (e) only required the signature of the first named insured for a valid stacking waiver. Trial Court Opinion, 8/11/22, at 6-7; 75 Pa.C.S.A. §§ 1738(d) and (e). The trial court found ambiguity because Section 1738(c) refers to "[e]ach named insured." *Id.* at 8; 75 Pa.C.S.A. § 1738(c).

However, when read in context, Section 1738(c) provides:

Each named insured **purchasing** uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b).

75 Pa.C.S.A. § 1738(c) (emphasis added). Critically, the phrase "each named insured" is modified by the word "purchasing." ***See id.***

The word "purchasing" is defined as "to obtain for money or by paying a price; buy[.]" Webster's New World College Dictionary, 1181 (5th ed. 2020). Thus, the plain language of Section 1738(c) only requires notice to the named insured who purchased the policy, who is the first named insured referenced in Section 1738(d) and (e). ***See Rupert II***, 291 F.3d at 248 (emphasizing importance of the word "purchasing" in Section (c); discussing how it supports Justice Zappala's conclusion in ***Rupert I*** that all that is required for a valid stacking waiver is the signature of the first named insured at the inception of the policy). Based on the plain language of Section 1738(c), we conclude the trial court committed an error of law in finding Section 1738 ambiguous. ***See Goodwin***, 280 A.3d at 943-44.

For the reasons discussed above, we vacate the judgment entered in favor of Mrs. Golick and remand to the trial court for the entry of judgment in favor of Appellant.

Judgment vacated. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/7/2023